her by twenty feet. But if it was a mistake in the pilot to back when he did, it was not a fault that renders the ferry-boat liable, because it was caused by the danger created by the close approach of the Martin at a high and improper rate of speed.

There must be a decision in favor of the libellants, in the first case, with an order of reference to ascertain the amount of the damage. In the second case, the libel must be dismissed, with costs.

---

## Case No. 4,092.

### The D. R. MARTIN.

[See Case No. 1,030.]

---

D. R. MARTIN, The (BARNEY v.). See Case No. 1,030.

---

## Case No. 4,092a.

### DROPE v. MILLER.

[Hempst. 49.] [1]

Superior Court, Territory of Arkansas. April, 1827.

#### EQUITY—ISSUE FOR JURY.

Issue directed out of chancery to ascertain whether a partnership, asserted by complainant and denied by defendant, was formed as alleged.

[This was a bill in equity by William Drope against John Miller.] Order to try disputed facts.

Before JOHNSON and ESKRIDGE, Judges.

OPINION OF THE COURT. In this case it is alleged by the complainant that he formed a partnership in trade with the defendant, in April, 1819, which fact is denied by the defendant. It is, therefore, ordered that a jury come at the next term on the law side of this court to ascertain by their verdict, whether there was or was not a partnership in trade formed by said Drope and Miller, in April, 1819, and that the verdict of the jury be immediately certified to this court as a court in chancery.

---

DRUET (CLARKE v.). See Case No. 2,850.

---

## Case No. 4,093.

### In re DRUMMOND.

[1 N. B. R. (1873) 231 (Quarto, 10); [2] 1 Am. Law T. Rep. Bankr. 7.]

District Court, D. Indiana.

BANKRUPTCY—FRAUDULENT PREFERENCES—PLEADING AND PROOF.

1. Every failing debtor who gives a preference to a part of his creditors, thereby com-

[1] [Reported by Samuel H. Hempstead, Esq.]

[2] [Reprinted from 1 N. B. R. 231 (Quarto, 10), by permission.]

mits an act of bankruptcy, and a judgment that he is a bankrupt must follow.

[Cited in Re Silverman, Case No. 12,855; Re Ryan, Id. 12,183; Curran v. Munger, Id. 3,487; Re Jacobs, Id. 7,159.]

2. When two distinct matters, each of which contains a good cause of action or defence, are alleged conjunctively, it is enough if either of them be satisfactorily proved.

[Cited in Re Sutherland, Case No. 13,638; Re Dunkle, Id. 4,160; Re McKibben, Id. 8,859; Re Marter, Id. 9,143.]

On the 19th of July last, several mercantile firms in Cincinnati filed in this court a petition against John T. Drummond, charging that, on the 20th of March last, he committed several acts of bankruptcy, and praying that he be declared a bankrupt. They claim that they are creditors to the aggregate amount of $2,784.36. The acts of bankruptcy specified are as follows: 1. That on the 20th of March, 1867, at St. Paul, in Indiana, Drummond, being possessed of certain estate, property, rights, and credits, including a stock of merchandise, transferred and sold the same and all his other property to one James Trimble and John Read, with intent to hinder, delay, and defraud his creditors. 2. That said Drummond, on the day aforesaid, in contemplation of insolvency, sold the said property to said Trimble & Read, to whom he was indebted, and did afterward pay and assign certain notes, and accounts, to other of his creditors, with intent to defeat, and delay, the operation of the bankrupt act, and to give a preference to said creditors. Drummond has filed a plea denying all the charges, and the parties have by agreement submitted the issue thus made for trial to the court without a jury.

The evidence is substantially as follows: That on the 20th of March last, the petitioners were and still are, creditors of Drummond, as alleged in the petition. That for more than a year past, Drummond has been, and now is, a resident of St. Paul, in Shelby county, Indiana. That in May, 1866, said Trimble & Read, then, and still residents of St. Paul, were the owners of a store of country merchandise in that town, and then and there sold the same to Drummond for several thousand dollars, and in part payment received from him a conveyance of 200 acres of land at the price of $1,000, the residue of the price of the goods, to wit: $1,500 remaining unpaid till the 20th of March last, on which day, Drummond finding, as he swears, that he could not carry on his business and pay his debts, proposed to Trimble & Read to sell his store to them in payment of his debt to them, and in order to pay his other debts which he had in the mean time contracted with merchants at Cincinnati to keep up his stock of goods. That Trimble & Read assented to this proposition; and it was agreed between them that the goods should be invoiced, and taken by Trimble & Read at wholesale Cincinnati prices; that they should take back said land at $1,000, and that